UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-23914-BLOOM/Elfenbein

LINDA LORELLO

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

### ORDER ON MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Dismiss Plaintiff's Complaint, ECF No. [18] ("Motion"). Plaintiff Linda Lorello ("Plaintiff") filed a Response in Opposition to Defendant's Motion ("Response"), ECF No. [19], to which Defendant filed a Reply, ECF No. [22]. The Court has reviewed the Complaint, the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.     BACKGROUND**

On August 29, 2025, Plaintiff filed her Complaint against Defendant under maritime law, asserting claims for Negligent Failure to Warn (Count I), Negligent Failure to Maintain (Count II), Vicarious Liability for Negligent Failure to Warn (Count III), Vicarious Liability for Negligent Failure to Inspect (Count IV), Vicarious Liability for Negligent Failure to Maintain (Count V), and Negligent Training of Crew Members (Count VI). *See* ECF No. [1]. The Complaint alleges as follows:

Case No. 25-cv-23914-BLOOM/Elfenbein

Defendant is a cruise line company that owned and operated the vessel *Carnival Vista*. *Id.* at ¶ 3. On August 1, 2024, Plaintiff "was a passenger aboard the cruise ship *Carnival Vista*" and "was leaving [the] Lido Deck elevator bank at the center of the ship, heading outside towards the Lido Deck to get an ice cream from the station near Guy's Burgers." *Id.* at ¶¶ 7-8. That day, "there existed a hazardous [wet slippery, transitory, substance] on the floor of the Lido deck just outside the automated doors leading passengers from the Lido Deck elevator bank at center ship to outside on the Lido Deck near the dining areas." *Id.* at ¶ 9. As Plaintiff passed through the automated doors on her way to the ice cream station, she "slipped and fell on [the] puddle of water or slippery substance that was on the deck." *Id.* at ¶ 10. Despite the existence of the dangerous condition on the floor, and crew members within 20 feet of the area[1] who were "close enough to appreciate the wet substance, "[t]here were no warning signs posted in the area," and no other warnings were given to Plaintiff or the other passengers on the ship. *Id.*

"The hazardous condition was not open and obvious to reasonable passengers in the area, including Plaintiff, because the wet, slippery, and transitory substance and consequent slippery nature of the flooring in that area on the lido deck was not visually conspicuous, did not contrast with the flooring material, and therefore was not visible to reasonable passengers who were not trained to be looking down or inspecting the floor while walking." *Id.* at ¶ 12. However, Defendant and the crew were on notice of the dangerous condition prior to the subject incident. "[Defendant] had a crewmember[ ] stationed near the tiki bar on the Lido deck, approximately 20 feet from where plaintiff slipped and fell. . . . In addition, Carnival had crew members working a bar and restaurant on the Lido Deck that were near [the] area of the incident . . . who would also have seen and appreciated the wet area." *Id.* ¶ 14.

---

[1] Plaintiff further alleges that a crew member holding a mop was "standing on the Lido deck approximately 20 feet from where she fell, near the tiki bar[.]" ECF No. [1] at ¶ 11.

2

Furthermore, there were a number of prior and similar incidents that occurred on the "*Carnival Vista*, and its sister ships (*Carnival Horizon*, *Carnival Panorama*, *Carnival Venezia*[,] and *Carnival Firenze*) or on other Carnival ships within its fleet under similar circumstances[.]" *Id.* at ¶ 15. Given these prior incidents, "Carnival is aware that the Lido Deck, specifically the lido dining (inside), lido dining (outside), and open decks, are locations where passengers are at a high risk of falling." *Id.* at ¶ 16.

Accordingly, Defendant and the crew members stationed at Lido Deck 20 breached their duty to act with reasonable care under the circumstances by (1) failing to "reasonably monitor and maintain the 'Areas of Most Potential Slip and Falls[,]'" which includes the Lido Deck area where plaintiff was injured;" (2) failing to "reasonably maintain the subject area by ensuring there was no slippery substance accumulating on the deck;" (3) failing to "make reasonable inspection of the area to make sure there was no accumulation of liquid, knowing the area was prone to becoming slippery when wet;" (4) failing to "have any procedure for making regular inspections of the area with enough frequency to discover both slip resistance issues and accumulation of liquid; and (5) failing to "act with reasonable care under the circumstances." *Id.* at ¶ 29. Defendant and certain members of the crew also breached their duty to adequately warn by: (1) failing "to identify the dangerous condition in real time and alert the passengers in the area of the dangerous condition; (2) failing "to post or maintain adequate signage in areas on the ship where the deck surface is known to become hazardous and dangerous;" (3) failing "to provide warning through public announcements of the dangerous condition;" (4) failing "to warn and provide re-route foot traffic;" and (5) failing "to report dangerous conditions to [a] supervisor or employer." *Id.* at ¶ 40.

Defendant also "failed to train its crew members" (1) "how to reasonably monitor and maintain the Lido Deck area;" (2) "to recognize and maintain high-traffic deck area(s) where

3

[Defendant] knows passengers are likely to walk;" (3) "to recognize and maintain 'Areas of Most Potential Slip and Falls' where [Defendant] knows dangerous and hazardous conditions are more likely to appear;" (4) "to take reasonable care and measure to inspect and clean the deck of slippery conditions;" (5) on the "proper inspection frequency to prevent hazardous conditions from injuring passengers;" (6) on how "to identify and prevent slip and fall injuries to passengers;" (7) on "how to maintain safe walking paths for passengers on board;" and (8) on "how to continually inspect the deck for heat hazards known to cause slip and falls." *Id.* at ¶ 67.

Defendant now seeks dismissal of the vicarious liability claims in Counts III-V because those counts fail to establish "facts showing that any specific Carnival crew member committed a negligent act that proximately caused [Plaintiff's] injuries." ECF No. [18] at 3. Defendant also moves to dismiss Plaintiff's negligent training claim in Count VI because Plaintiff has not identified a specific training program or policy that Defendant failed to implement. *Id.* at 9.

Plaintiff responds that, as to Counts III-V, she "has identified specific Carnival crew members by their station, assignment, or conduct," which is more than sufficient to establish her vicarious liability claims at the motion to dismiss stage. ECF No. [19] at 4. Plaintiff also maintains that she has adequately pled her negligent training claim because her allegations in Count VI specifically establish how Defendant failed to train its crew members. *Id.* at 10.

## II. LEGAL STANDARD

### A. Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

*see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.

### B. General Maritime Law

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed

maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro,* 693 F.3d at 1336 (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro*, 693 F.3d at 1336).

### III.    DISCUSSION

#### A. Vicarious Liability - Counts III, IV, and V

Defendant argues that the Court should dismiss Plaintiff's vicarious liability claims in Counts III-V because "they do not allege facts showing that any specific Carnival crew member committed a negligent act that proximately caused [Plaintiff's] injuries." ECF No. [18] at 3-4. According to Defendant, to establish a vicarious liability claim, a plaintiff must not only identify a tortfeasor, but "must adequately plead the negligence of the specific tortfeasor whose conduct forms the basis of the claim." *Id.* at 4. Defendant contends that Plaintiff's vicarious liability allegations are insufficient because the claims in Counts III-V are based on Defendant's duty of care rather than any individual crewmember and rely on "vague references to 'Carnival's crew,' rather than facts about a particular crewmember's negligent act(s)." *Id.* Although "Plaintiff need not plead a name," Defendant argues "she must supply some identifying facts, such as a specific action, linking liability to a particular individual." *Id.* According to Defendant, "[a]lleging that an unidentified crewmember was 'holding a mop' does not permit [it] to discover who that person

6

was" and is therefore insufficient to plausibly state a claim of vicarious liability. *Id.* at 5. As such, Defendant contends Counts III-V must be dismissed.

Plaintiff responds that she has plausibly stated a claim in each of her three vicarious liability claims. ECF No. [19] at 3. Plaintiff argues that to identify a crewmember in a vicarious liability claim adequately, she may simply specify the employee's assignment or duty and the negligent conduct of the individual that caused her injuries. Therefore, Plaintiff contends she has satisfied her initial burden, as she "has identified specific Carnival crew members by their station, or assignment, and conduct." *Id.* at 4. Furthermore, "[e]ach of the vicarious liability counts expressly alleges that 'at the time of the incident, [Defendant] had a crewmember stationed near the tiki bar on the Lido Deck, approximately 20 feet from where plaintiff slipped and fell.'" *Id.* (quoting ECF No. [1] at ¶¶ 36, 47, 55). According to Plaintiff, Counts III, IV, and V also specifically explain how the identified employees breached their duties of care. Therefore, Plaintiff insists she has alleged sufficient particularized facts to survive a motion to dismiss her vicarious liability claims.

"To state a claim for vicarious liability in a maritime action against a shipowner, a plaintiff must plausibly allege that an employee committed a negligent act: '(1) within the scope of employment, or (2) during the course of employment and to further a purpose or interest of the employer.'" *Manzy v. Carnival Corp.*, Case No. 24-cv-22357, 2024 U.S. Dist. LEXIS 181053, at *6 (S.D. Fla. 2022) (quoting *Carey v. Kirk*, 21-20408-CIV, 2022 WL 17996027, at *7 (S.D. Fla. Sept. 2, 2022)); *see also Goroni v. Carnival Corp.*, Case No. 1:24-cv-22995, 2024 WL 5373964, at *25 (S.D. Fla. Dec. 9, 2024) *report and recommendation adopted* No. 24-22995-CV, 2025 WL 587070 (S.D. Fla. Feb. 24, 2025) ("To establish a shipowner's vicarious liability in a maritime-tort case, a plaintiff must show that a tortfeasor employee committed 'negligent acts . . . within the scope of employment.'") (quoting *Mitchell v. Carnival Corp.*, No. 24-CV-23407, 2024 WL

7

4818486, at *3 (S.D. Fla. Nov. 18, 2024) (additional level of citation and quotation omitted)). There is no dispute among the parties that any negligent conduct committed by one of Defendant's employees was within the scope of his or her employment. Therefore, the only question before the Court is whether Plaintiff has adequately identified a negligent act of a particular employee in each of the three counts that would support a vicarious, as opposed to a direct liability claim. The Court finds Plaintiff's allegations in Counts III-V are sufficient.

While Plaintiff's vicarious liability claims do include generalizations about Carnival crew members that would be more appropriately included in her direct liability claims, Plaintiff provides allegations concerning particular crew members as well. In her failure to warn claim (Count III), Plaintiff alleges that the "crewmember stationed on the Lido Deck, 20 feet from where [she] was injured" who was "assigned to monitor, oversee operations on the Lido Deck[,] and warn passengers," breached his or her duty of care by failing to warn passengers of the hazardous condition of the deck area [when] it was not in a safe condition for passenger use[.]" ECF No. [1] at ¶¶ 38, 40. Similarly, in her failure to inspect claim (Count IV), Plaintiff alleges that "[a]t the time of the incident, there was a crewmember stationed on the Lido Deck, 20 feet from where Plaintiff slipped and fell" who had a "duty to be monitoring the area for spills and warning passengers of wet areas accordingly." *Id.* at ¶ 46. "The crew was close enough that they would have been able to see and appreciate the wet area on reasonable inspection, for which they were on duty." *Id.* at ¶ 47. Plaintiff further alleges in Count IV that the crew member stationed 20 feet away breached his or her duty of care by failing "to inspect the Lido Deck area and ensure it was safe for passenger use" thereby causing Plaintiff's injuries. *Id.* at ¶ 49. Plaintiff makes similar allegations regarding this crewmember in her failure to maintain claim in Count V, asserting that the crew member breached his or her duty of care by failing to "clean and maintain the Lido Deck

area and ensure it was safe for passenger use." *Id.* at ¶ 58. Earlier in the Complaint, Plaintiff also provided additional details about this crew member, including the fact that the individual was standing "near the tiki bar" at the time of the incident, and "was holding a mop." *Id.* at ¶ 11.

Despite Defendant's arguments to the contrary, allegations that a crew member stationed on Lido Deck 20, holding a mop near the Tiki Bar at the time of the incident on August 1, 2024, adequately identifies the negligent crew member with sufficient particularity at this stage of the proceedings. Indeed, as Defendant concedes, Plaintiff need not identify a particular crew member by name, nor does a plaintiff even need to allege the crew member's specific job title so long as the "plaintiff [at least] identifies the employee by ways of 'roles or tasks.'" *Riffle v. Carnival Corp.*, No. 25-CV-20355, 2025 WL 1158107, at *4 (S.D. Fla. Apr. 21, 2025) (quoting *Goroni*, 2024 WL 5373964, at *26) (citing *Mathis v. Classica Cruise Operator Ltd. Inc.*, No. 23-CV-81479, 2024 WL 1430508, at *4 n.2 (S.D. Fla. Apr. 1, 2024), *report and recommendation adopted*, No. 23-81479-CIV, 2024 WL 3616006 (S.D. Fla. Aug. 1, 2024) ("A complaint in a vicarious liability case need not identify the negligent agent by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent."); *Mclean v. Carnival Corp.*, No. 22-23187-CIV, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023) ("While the Plaintiff does not specifically name the crew members, there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crew members involved in the incident simply to file a complaint. There were, undoubtedly, specific crew members involved in the incident that the Plaintiff alleges."); *Mitchell v. Carnival Corp.*, Case No. 24-cv-23407, 2024 WL 4818486, at *3 (S.D. Fla. Nov. 18, 2024)); *see also Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1267 (S.D. Fla. 2022) ("The Court is unaware of any legal authority that requires the plaintiff to allege the names of the employees who were negligent at this stage of

the proceedings."). As Plaintiff correctly points out, in *Coletti v. Carnival Corp.,* this Court concluded that the plaintiff adequately identified "specific employees" by alleging the negligent actors were "Defendant's employees assigned to maintain, monitor, or warn passengers of hazards in the particular area of [ ] Deck 9 where [the p]laintiff slipped and fell." Case No. 23-cv-23275, 2024 WL 580355, at *6 (S.D. Feb. 13, 2024). The Court does not find Plaintiff's vicarious liability allegations are materially different from those in *Coletti*, given that Plaintiff has established where the negligent employee was stationed at the time of the incident, his or her responsibility to maintain, monitor, and inspect the floors for spills and other hazardous conditions, the conduct that Plaintiff contends was negligent, and even identifies the crewmember as the individual by the tiki bar who was holding a mop. Accordingly, because Plaintiff has established that a specific Carnival crewmember engaged in negligent acts[2] within the scope of his or her employment that proximately caused Plaintiff's injuries, the Court is satisfied that the Complaint has plausibly alleged all three vicarious liability claims. *See Davis v. Carnival Corp.*, 22-cv-24109, 2023 WL 5955700, at *4 (S.D. Fla. July 31, 2023) (finding that plaintiff "pleaded sufficient facts . . . to assert a vicarious liability claim" where the plaintiff "allege[d] that the specific crew members owed her a duty of reasonable care, that the crew members breached that duty, and that the breach proximately caused her actual harm"). Therefore, Defendant's request to dismiss Counts III-V is denied.

### B. Negligent Training - Count VI

Defendant contends that Plaintiff's negligent training claim should be dismissed "because Plaintiff pleads 'negligent training' in the abstract, without identifying any specific training

---

[2] Plaintiff specifically alleges that the crew member was negligent by failing to warn her or the other passengers of the hazardous condition on deck, failing to timely inspect the floor where the crewmember was stationed to ensure the floor was safe for passenger use, and negligently failing to properly clean and maintain the Lido Deck area despite having a mop in hand at the time of the subject incident.

10

program or policy, how [Defendant] implemented or operated that program, how the program was deficient, or how any training defect proximately caused the [the subject incident]." ECF No. [18] at 9. According to Defendant, because a negligent training claim requires a plaintiff to identify a specific policy, procedure, or training and explain how the defendant failed to properly implement that specific policy, procedure, or training, Plaintiff's negligent training claim necessarily fails.

Plaintiff responds that she "has alleged specific, factual allegations directly tied to Carnival and the area where the incident occurred." ECF No. [19] at 7. According to Plaintiff, her negligent training allegations are like those alleged by the plaintiff in *Spotts v. Carnival*, 711 F. Supp. 3d 1360 (S.D. Fla. 2024). *Id.* at 7-8. Therefore, even though the Complaint does not identify one of Defendant's specific policies or trainings, because Plaintiff "identifies the specific location of the incident (the Lido deck), alleges crew members who were not properly trained, and alleges how [Defendant] was negligent in the implementation and/or operation of its training programs" Plaintiff maintains she has plausibly established her negligent training claim. *Id.* at 9.

Negligent training is a "recognized dut[y] under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021); *see Gutman v. Quest Diagnostics Clinical Laboratories, Inc.*, 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010). Therefore, for a plaintiff "to state a claim for negligent training, he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11h Cir. 2005). It is not enough for the plaintiff to merely challenge the content of the program or to "identify that certain training programs exist and [ ] allege in a conclusory manner that [the d]efendant was negligent in operating such training

11

programs." *Mercado*, 407 F.3d at 1162; *Walsh v. Carnival Corp.*, Case No. 20-cv-21454, 2020 WL 10936272, at *5 (S.D. Fla. July 7, 2020). The plaintiff must provide factual allegations that establish "how [the d]efendant was negligent in implementing or operating its training programs." *Walsh*, 2020 WL 10936272, at *5; *Lirette v. Carnival Corp.*, No. 24-24035-CIV, 2025 WL 385572, at *2 (S.D. Fla. Feb. 4, 2025); *see also Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (concluding that to state a negligent training claim, a plaintiff "must identify a training program or policy and explain specifically how the [defendant] was negligent in implementing it").

Here, Plaintiff has failed to adequately allege a negligent training claim. While Plaintiff alleges that the Carnival crew members were inadequately trained on how to properly recognize, monitor, maintain, and inspect high traffic areas where Defendant knew or reasonably expected dangerous and hazardous slip and fall conditions to exist, Plaintiff fails to identify any specific program or training Defendant had in place that it failed to implement. *See Lirette*, 2025 WL 385572, at *3 ("[W]ithout at least identifying a specific training program, a negligent-training claim is dead on arrival."); *Quashen*, 576 F. Supp. 3d at 1296 ("[I]t is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations."). While Plaintiff tries to analogize her negligent training allegations to those made by the plaintiff in *Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360 (S.D. Fla. 2024), the allegations in that case are readily distinguishable. *See* ECF No. [19] at 9. In *Spotts*, the plaintiff specifically alleged various types of trainings and procedures the defendant had in place at the time of the incident, including training the "crew members to inspect and maintain the deck areas in a clean and dry condition," implementing "training and procedures [to] instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured," and

providing training and procedures "require[ing] crew members to place wet floor signs on walkways that become repeatedly wet and/or are known to be wet." *Spotts*, 711 F. Supp. 3d at 1368. By contrast, here, there are no allegations in Count VI that identify any procedures or training Defendant had established, nor does it allege which of those trainings were improperly implemented. Instead, Plaintiff merely alleges in a conclusory fashion that Defendant failed to train the *Carnival Vista* crew to take certain precautionary steps to prevent slip and fall incidents. As such, Plaintiff's negligent training claim is dismissed.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [18]**, is **GRANTED in part and DENIED in part**.
2. The Motion is **DENIED** as to **Counts III, IV, and V**.
3. The Motion is **GRANTED** as to **Count VI**.
4. Defendant shall file an Answer to the remaining claims in Plaintiff's Complaint no later than **November 19, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 5, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record